UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CISCO SYSTEMS, INC.,

    Plaintiff,

       v.

ALBERTA TELECOMMUNICATIONS RESEARCH CENTRE, et al.,

    Defendants.

_____/

No. C 12-3293 PJH

**ORDER GRANTING MOTION TO DISMISS**

       The motion of defendants Alberta Telecommunications Research Centre and TR Technologies, Inc. ("TR Labs") came on for hearing before this court on August 29, 2012. Plaintiff appeared by its counsel Louis Trompos and Andrew Danford, and defendants appeared by their counsel George Summerfield. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

       This is a case brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of non-infringement and invalidity as to eight patents owned by TR Labs – U.S. Patent Nos. 4,956,835 ("the '835 patent"); 5,850,505 ("the '505 patent"); 6,377,543 ("the '543 patent"); 6,404,734 ("the '734 patent"); 6,421,349 ("the '349 patent"); 6,654,379 ("the '379 patent"); 6,914,880 ("the '880 patent"); and 7,260,059 ("the '059 patent"). The patents are primarily method patents generally directed to the design and operation of telecommunications networks. The complaint was filed on June 26, 2012, and the first amended complaint ("FAC") was filed on July 6, 2012.

       Plaintiff Cisco Systems, Inc. ("Cisco") is a developer of networking equipment, and its customers include such companies as AT&T Corporation ("AT&T"), Verizon Services

Corporation ("Verizon"), Quest Communications LLC (now "Century Link"), Windstream Corporation ("Windstream"), Comcast Corporation ("Comcast"), Sprint Nextel Corporation ("Sprint Nextel"), Cox Communications, Inc. ("Cox"), tw telecom Inc. ("tw telecom"), and Level 3 Communications, Inc. ("Level 3"). Cisco alleges that TR Labs has accused Cisco's customers of infringing the eight patents-in-suit through use of Cisco's products in their telecommunications networks.

TR Labs has sued AT&T and Verizon in two actions currently pending in the District of New Jersey. In <u>Alberta Telecomm. Res. Ctr. v. AT&T Corp.</u>, No. 09-3883, TR Labs alleges infringement of five of the eight patents (the '880, '059, '734, '835, and '505 patents), and AT&T asserts counterclaims of invalidity and non-infringement. In <u>Alberta Telecomm. Res. Ctr. v. Verizon Servs. Corp.</u>, No. 10-1132, TR Labs alleges infringement of three of the eight patents (the '880, '349, and '059 patents), and Verizon asserts counterclaims of invalidity/unenforceability and non-infringement. In a third case filed in the District of New Jersey, <u>Verizon Servs. Corp. v. Alberta Telecomm. Corp.</u>, No. 11-1378, Verizon seeks a declaratory judgment of non-infringement and invalidity of two of the eight patents (the '505 and '543 patents) and in return, TR Labs asserts counterclaims of infringement.

The three New Jersey cases were consolidated for purposes of claim construction, and a claim construction hearing was held over three days in November 2011. On August 10, 2012, the court issued a lengthy order construing the claims. Motions for summary judgment filed by AT&T and Verizon remain under submission.

TR Labs also recently filed case No. 12-0581, <u>Telecommunications Res. Labs. v. Qwest Commc'ns Co., LLC</u>, in the District of Colorado, against Century Link, Quest Corporation, Windstream, Sprint Nextel, Comcast, Cox, tw telecom, and Level 3, alleging infringement of all eight patents at issue in the present lawsuit.

In the present action, Cisco asserts that an actual controversy exists between itself and TR Labs, based on the fact that TR Labs has served infringement contentions in the AT&T New Jersey litigation identifying the use of Cisco's ONS 15454 multiservice platforms

in AT&T's network as infringing TR Labs' patents; and also based on the allegation in the second amended complaint in the Colorado action that the defendants in that case "have deployed at least Cisco ONS 15454 Multiservice platforms . . . and/or Cisco CRS-1 routers" in their telecommunications networks to "utilize the functionality of the afore-referenced devices" in a manner that infringes one or more of the eight patents-in-suit.

Cisco asserts further that TR Labs sent letters in March 2012 to several of Cisco's other customers alleging that their telecommunications networks infringe TR Labs' patents, including US Signal Company LLC; and that TR Labs has provided claim charts to some of Cisco's customers alleging that the Cisco's customers' telecommunications networks, some of which utilize Cisco components, infringe one or more of the patents-in-suit. With its briefing in opposition to the present motion, Cisco has provided copies of claim charts and infringement charts filed August 2, 2012 in the New Jersey AT&T litigation, in which TR Labs made a number of references to Cisco components used by AT&T in its allegedly infringing activities, and has also provided copies of claim charts relating to Cisco components allegedly used by Comcast.

**DISCUSSION**

A.    Legal Standard

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court may dismiss a complaint when it lacks subject matter jurisdiction. In patent suits, Federal Circuit precedent governs the determination of whether the court has subject matter jurisdiction. See Minnesota Mining & Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991).

The Declaratory Judgment Act provides that "[i]n an actual case or controversy within its jurisdiction . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party facing such declaration." 28 U.S.C. § 2201(a). Accordingly, "the Declaratory Judgment Act requires an actual case or controversy between the parties before a federal court can constitutionally assume jurisdiction." Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (1987) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937)).

The phrase "actual case or controversy" as used in the Act "refers to the same 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  This jurisdictional inquiry is concerned with the facts that exist when the plaintiff originally filed its complaint, and if there was not a case or controversy at the time of filing, subsequent events cannot make subject matter jurisdiction proper.  See Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.2d 1377, 1384 (Fed. Cir. 2010).  Thus, the burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed.  King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1282 (Fed. Cir. 2010); Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

In considering whether there exists a case or controversy, courts must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id., 549 U.S. at 127 (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)); see also Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1337 (Fed. Cir. 2007).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Medimmune, 549 U.S. at 127.

The Federal Circuit has emphasized that "there is . . . no facile, all-purpose standard" for determining whether an Article III controversy exists.  Cat Tech, LLC v. Tube Master, Inc., 528 F.3d 871, 879 (Fed. Cir. 2008); see also Maryland Cas. Co., 312 U.S. at 273.  For this reason, the court must calibrate its analysis to the facts of this particular case to determine whether "all the circumstances" demonstrate a case or controversy.  See Medimmune, 549 U.S. at 127.

4

B.	Defendants' Motion

TR Labs argues that Cisco cannot establish that there is a "case or controversy" between the parties because Cisco has failed to allege facts sufficient to establish a claim regarding direct, induced, or contributory infringement on Cisco's part. There appears to be no dispute that Cisco is not alleging a case or controversy between itself and TR Labs with regard to direct infringement.

With regard to contributory infringement and induced infringement, TR Labs contends that the complaint does not allege sufficient facts to support such a claim. TR Labs also argues that because it never alleged facts (in the New Jersey and Colorado actions) sufficient to make out a claim of direct, contributory, or induced infringement against Cisco, there can be no justiciable controversy between the parties, and the present declaratory judgment complaint should be dismissed.

Contributory infringement under 35 U.S.C. § 271(c) occurs if as party sells or offers to sell a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such a patent." 35 U.S.C. § 271(c). See In re Bill of Lading Transmission and Processing Sys. Patent Litig., 681 F.3d 1323, 1337 (Fed. Cir. 2012). Here, TR Labs asserts, Cisco has not pled any facts showing that the Cisco components have no substantial non-infringing uses.

Induced infringement under 35 U.S.C. § 271(b) requires a showing that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006). Thus, TR Labs argues, Cisco must allege facts showing that TR Labs alleged in the New Jersey and Colorado actions that Cisco specifically intended its customers to infringe TR Labs' patents, and that Cisco knew that those customers were infringing the patents. However, they note, there are no such allegations in any of the claims in the New Jersey or Colorado lawsuits.

5

In opposition, Cisco argues that TR Labs has sued Cisco's customers based on their use of an "accused network" which is identified as a "Cisco network" in the claim charts served on AT&T and provided to some of the defendants in the Colorado litigation. Cisco contends that TR Labs' assertion that the allegedly infringing activities of Cisco's customers are based on their use of Cisco products is sufficient to confer subject matter jurisdiction. In support, Cisco cites Arris Group Inc. v. British Telecommunications PLC, 639 F.3d 1368 (Fed. Cir. 2011); and Powertech Tech. Inc. v. Tessera, Inc., 660 F.3d 1301, 1307 (Fed. Cir. 2011), which relied on Arris.

In Arris, a supplier of network components sued British Telecommuncations ("BT") following BT's accusation that the supplier's customer (a telecommunications network provider) infringed BT's patents. Although BT never explicitly accused the supplier of infringement, the supplier's products were central to BT's infringement contentions. Id. at 1377. In BT's claim charts, the supplier was "specifically referenced by name" on 26 pages, or its product literature was "copied from its website for illustrative effect." Id. Based on BT's focus on the supplier's products in its infringement contentions, the Federal Circuit found an actual case or controversy between the supplier and BT. Id. at 1378-81.

The court recognized that under MedImmune, there must be an "adverse legal interest" for there to be declaratory judgment jurisdiction. The court concluded that this "adverse legal interest" required a "dispute as to a legal right – for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." Id. at 1374. The court added that "[i]n the absence of such a legal controversy . . . , a mere adverse economic interest is insufficient to create declaratory judgment jurisdiction." Id. at 1374-75. Nevertheless, the court concluded that a legal controversy did exist because the supplier could incur potential legal liability for contributory infringement based on BT's infringement contentions against the supplier's customer:

> Where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if . . . there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by

its customers.

Id. at 1375.

Based on this, Cisco argues that a patentee need not expressly allege induced or contributory infringement by the supplier to give rise to declaratory judgment jurisdiction. Rather, where the "supplier's product functions as a material component" of the allegedly infringing system or method, there may be an "implicit assertion" sufficient to give rise to an actual case or controversy. See id. at 1375-76. For this reason, Cisco asserts, the fact that TR Labs has not specifically alleged indirect infringement against Cisco is irrelevant.

Finally, Cisco contends that even if there were some question as to the existence of an actual case or controversy based on TR Labs' infringement contentions alone – which Cisco contends there is not – TR Labs' refusal to provide Cisco with a covenant not to sue for past and present infringement is evidence of an actual case or controversy. Cisco argues that it brought this action to resolve the controversy between itself and TR Labs concerning the involvement of Cisco products in the alleged infringement; and that while TR Labs appears to now be taking the position that Cisco has not itself infringed any TR Labs patent, TR Labs has also refused agree to Cisco's proposed covenant not to sue, which Cisco claims would fully cover the manufacture, use, and sale of Cisco's products.

The court finds that Cisco has not established that the court has declaratory judgment jurisdiction under the facts and circumstances presented here, and that TR Labs' motion must be GRANTED. As noted above, it does not appear that there can be any dispute regarding direct infringement. As for indirect (contributory/induced) infringement, it is undisputed that the Cisco components are used in the networks operated by AT&T, Verizon, and the Colorado defendants. Nevertheless, the mere fact that Cisco supplied components to the alleged infringers – without more – does not create a dispute regarding indirect infringement.

In Arris, the court found that BT had accused Arris' customer Cable One of direct infringement of various system and method claims. The court then provided a detailed analysis of BT's 118-page presentation of its infringement contentions, pointing to the many

instances of how BT singled out Arris' products used in Cable One's network, including the inclusion of multiple claim tables purporting to match components of Cable One's network to elements of the system/method claims of the patents-in-suit. The court emphasized that on 26 of those 118 pages, Arris was specifically referenced by name, or its products were identified by brand name and model, or its product literature was copied from its website for illustrative effect. Id. at 1376-77.

The court emphasized that BT's presentation made clear that Cable One's use of specific Arris products was central to BT's infringement contentions, and that for many of the asserted claims, BT asserted that virtually all the claimed system's elements or method steps were practiced by the specific Arris products used in Cable One's network. Id. at 1377-78.

The court noted further that Arris had been directly and substantially involved in BT's infringement and licensing negotiations. First, the court noted, Arris was included in the latter two of three meetings between BT and Cable One, which meetings were held at Arris' offices in Georgia. At the second meeting, BT proffered the same 118-page presentation it had previously given to Cable One at the first meeting in Phoenix. The court found that this activity shows that Arris was "within BT's primary audience" at the second meeting. At the third meeting, Arris provided BT with its responses to BT's infringement contentions, and BT requested that Arris send it further "formal rebuttal information." Following this, two conference calls took place between Arris and BT, during which Arris presented non-infringement arguments and BT responded. The court concluded that this "protracted process" between BT and Arris supported a finding that there was an Article III case or controversy regarding whether Arris was contributorily infringing BT's patents. Id. at 1378-79.

Here, by contrast, there is no evidence that is clear to the court that TR Labs provided a lengthy presentation of infringement contentions in the NJ or Colorado cases in which the claimed methods were practiced by the specific Cisco products used in the defendants' networks. Nor is there any evidence of any protracted discussions between

1   TR Labs and Cisco regarding TR Labs infringement contentions and Cisco's responses to
2   those contentions, as in Arris.

3   Thus, the facts in Arris are not identical to the facts in the present case, Cisco's
4   arguments notwithstanding.  It is true that Cisco has provided copies of claim charts
5   prepared by TR Labs for use in the New Jersey and Colorado litigation, in which TR Labs
6   has referenced certain Cisco components and publications.  However, the claim charts are
7   presented with no explanation, and the court sees no way to tell at this stage of the
8   litigation whether the references to Cisco components are intended as required parts of the
9   accused networks, or whether they are simply offered as illustrations or as part of the
10  background of the accused networks.

11  For example, with regard to the claim charts in the AT&T case, it is impossible to tell
12  whether the figures depicting Cisco networks were provided to show how networks work
13  generally, or whether the intent was to claim that the part of AT&T's network that is alleged
14  to infringe TR Labs' patents is necessarily comprised of Cisco components.  Moreover, the
15  court is not in a position at present to ascertain what methods these patents protect or how
16  the claim charts should be interpreted.

17  While the excerpts from Arris cited by Cisco in its opposition to the present motion
18  seem to support Cisco's position, when the court considers "all the facts alleged" and "all
19  the circumstances," as required by Medimmune, it is not clear that those rulings mandate a
20  finding that there is a justiciable controversy between TR Labs and Cisco.  At most, there
21  might be a justiciable controversy between TR Labs and Cisco – but, on the other hand,
22  there might not be.  Whether Cisco's components infringe TR Labs' patents depends on
23  how the components are used, how the network is configured, and whether or not there is
24  direct infringement by the customer.  Any effort to resolve this dispute is therefore
25  premature.

26  Finally, the parties' inability to agree on a covenant not to sue is not determinative of
27  this issue.  It is true, as the court noted in Arris, that a patentee's grant of a covenant not to
28  sue a supplier for infringement can eliminate the supplier's standing to bring a declaratory

judgment action. See id. at 1380-81. However, the converse – that because the parties were unable to agree on the terms of a covenant not to sue, there must necessarily be a justiciable controversy – is not necessarily true, particularly if, as TR Labs claims here, it was unwilling to agree to Cisco's draft proposal because such a covenant not to sue would have essentially resulted in the elimination of TR Labs' ability to sue alleged infringers who also happened to be Cisco's customers.

As the party asserting declaratory judgment jurisdiction, Cisco bears the burden of establishing the reality and immediacy of its exposure to liability for infringing TR Labs' patents. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007). That is, Cisco must show that the facts alleged, "under all the circumstances," demonstrate a "substantial" controversy of "sufficient immediacy" to warrant a declaratory judgment. MedImmune, 549 U.S. at 127 (quoting Maryland Cas. Co., 312 U.S. at 273). Considering the totality of the circumstances, the court finds that Cisco has not alleged or established a controversy of sufficient "immediacy and reality" to create a justiciable controversy between itself and TR Labs.

## CONCLUSION

Because Cisco has not met its burden of establishing declaratory judgment jurisdiction, TR Labs' motion to dismiss must be GRANTED.

**IT IS SO ORDERED.**

Dated: August 31, 2012

PHYLLIS J. HAMILTON
United States District Judge

10